IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LSS HOLDINGS, INC.,

    Plaintiff,

v().

LOREN K. MILLER, DIRECTOR
OF THE NEBRASKA SERVICE
CENTER, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES, et al.,

    Defendants.

:
:
:
:
:

Case No. 3:19-cv-84

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #18) AND OVERRULING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DOC. #19); JUDGMENT TO
ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF;
TERMINATION ENTRY

---

Plaintiff, LSS Holdings, Inc. ("Plaintiff" or "LSS"), alleges that on May 31, 2017, it filed a Form I-140, along with supporting documents (collectively "Petition"), with the U.S. Citizenship & Immigration Services ("USCIS" or "Agency") to employ permanently their founder and chief executive officer, Bjorn Larsen ("Larsen" or "Beneficiary"). Doc. #1-1, PAGEID##30-53. The Petition was filed in the "EB-1(C)" category. That category, also referred to as "E-13 category," is an employment-based, first-preference visa for individuals who are multinational executives or managers. Plaintiff's Petition was denied on December 20, 2018.

On March 21, 2019, LSS filed a Complaint alleging jurisdiction under the Immigration and Nationality Act § 101, 8 U.S.C. § 1101, et seq. ("INA"), and the Administrative Procedure Act ("APA"). The Complaint seeks declaratory and injunctive relief against the "unlawful, arbitrary[,] and capricious decision denying Plaintiff's I-140 immigrant Petition." Doc. #1.

This matter is before the Court on a Motion for Summary Judgment filed by Defendants, Loren K. Miller, the Director of the Nebraska Service Center, USCIS; Kenneth T. Cuccinelli, in his official capacity as the Acting Director of the USCIS; U.S. Department of Homeland Security official, Kevin McAleenan, in his Official Capacity as the Acting Secretary of the U.S. Department of Homeland Security; the USCIS; and the U.S. Department of Homeland Security (collectively, Defendants"), Doc. #18.[1] Plaintiff has also filed a Motion for Summary Judgment, Doc. #19, along with a response to Defendant's motion, styled as a "Reply," Doc. #20. Defendants have filed both a response to Plaintiff's motion for summary judgment and a reply, Doc. #22.

The motions for summary judgment, Docs. ##18 and 19, are now ripe for decision.

---

[1] At the time the Complaint was filed, L. Francis Cissna was the Director of USCIS, U.S. Department of Homeland Security, and Kirstjen Nielsen was the Secretary of the Department of Homeland Security. Since the filing of the Complaint, Kenneth Cuccinelli was named the Acting Director of the USCIS and Kevin McAleenan was named the Acting Director of the Department of Homeland Security. Both acting directors are automatically substituted as parties pursuant to Fed. R. Civ. P. 25(d).

2

## I. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Because a final administrative decision of the USCIS is at issue, however, the APA controls and "the usual rules" governing summary judgment do not apply." *Integrity Gymnastics & Pure Power Cheerleading, LLC v. U.S. Citizenship and Immigration Servs.*, 131 F.Supp.3d 721, 725 ((Marbley, J.) S.D. Ohio 2015) (citing *City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007)). Instead, the cross motions for summary judgment "serve as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Qing Tian v. United States*, No. 1:15CV264, 2017 WL 2964910, at *1 ((Barret, J.) S.D. Ohio July 12, 2017)

(citation omitted). A court reviews the agency's decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir.2007); 5 U.S.C. § 706(2)(a). An agency has acted in an arbitrary and capricious manner when

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Assoc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856 (1983), as cited in *Integrity Gymnastics & Pure Power Cheerleading, LLC.,* 131 F. Supp.3d at 726. A review by a court under this standard, however, is narrow and "'a court is not to substitute its judgment for that of the agency.'" *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th 2018) (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. 2856 (1983)). A court, however, "must ensure that the agency 'articulate[d] a rational connection between the facts found and the choice made and ... provide[d] something in the way of documentary support for its action.'" *Id.*

II. **Background Facts**

Larsen, a citizen of both Canada and Norway, is President and CEO of LSS, headquartered in Dayton, Ohio. Doc. #17, PAGEID##442-447; Doc. #17-2, PAGEID##886-889. He incorporated LSS in Delaware in 2012. Doc. #17,

4

PAGEID#889. LSS is a wholly-owned subsidiary of a Canadian based company, Lean Software Services, Inc. ("Lean Software"). *Id.* Larsen founded Lean Software in 2002 and has been continuously employed on a full-time basis as the CEO since its inception. *Id.*, PAGEID#887-888. Lean Software and LSS are collectively known as "Lean Industries." Together these two cross-border companies "develop and deliver comprehensive enterprise software solutions" to banks and financial institutions in North America and Europe. Doc. #17, PAGEID#441.

In May of 2017, Lean Industries had approximately $5.8 million in software sales and paid approximately $2.8 million in wages. The two companies had 15 employees in the United States, 22 employees in Canada and 2 employees in Portugal. *Id.*, PAGEID#416.

Since approximately 2012, Plaintiff had employed Larson as an L1-A manager or executive which enabled him to work as a nonimmigrant foreign employee in a managerial or executive capacity at the Dayton, Ohio, company. On May 31, 2017, Plaintiff filed its Petition with USCIS seeking classification of Larsen as an international executive under U.S.C. § 1153(b)(1)(C). Doc. #17-2, PAGEID##875-81. The application lists Larsen as "Founder& CEO" of LSS. LSS marked the category "[A] multinational executive or manager" on the Form I-140. *Id.* PAGEID#875. The letter submitted with Plaintiff's Petition seeking lawful permanent residence status for Larsen asserts that he "has the required job offer as a Multinational Executive." *Id.*, PAGEID##886 and 891.

5

As part of the Petition, LSS submitted: (1) evidence of Larsen's employment as President and CEO of LSS and Lean Software; (2) evidence of the corporation's creation along with financial and tax documents tied to the "cross-border enterprise;" (3) proof of Larsen's ownership of Lean Industries; (4) organizational employment charts demonstrating Larsen's position at the top of the corporate structure; (5) a list of job duties for Larsen's executive and managerial responsibilities, divided into approximate percentages of time spent; (6) the names, titles, wages and office locations of individuals who report to Larsen as well as the number of individuals who report to those executives and managers; (7) evidence that LSS has the ability to pay Larsen; and (8) news articles about Lean Industries and Larsen's executive and management responsibilities. *Id.*, PAGEID##887-1063; Doc. #19-1, PAGEID#1100.

On May 25, 2018, USCIS issued a Request for Evidence ("RFE") to LSS. Doc. #17, PAGEID##405-411. The RFE requested additional information from Plaintiff and identified the specific subjects that required further explanation. In response to the RFE, LSS sent to the USCIS, on August 13, 2018, a 13-page letter with over 450 pages of supporting documents.[2] Docs. ##17 and 17-1, PAGEID##412-873.

On December 20, 2018, the USCIS issued a Final Decision denying Plaintiff's Petition. *Id.* PAGEID##387-395.

---

[2] Some of the documents included by Plaintiff in its response to the RFE had previously been sent with the Petition.

## III. Legal Analysis

### A. Introduction

Because LSS wanted to employ Larsen on a permanent basis, it filed its Petition under the Immigration and Naturalization Act ("INA"), § 203(b)(1)(C). This section of the INA provides for a preference allocation of immigrant visas to aliens who qualify as "multinational executives and managers." 8 U.S.C. § 1153(b)(1)(C). For Plaintiff's Petition to be approved, it needed to establish, in general, that Larsen was employed in a "managerial or executive capacity" for at least one year in the three years prior to his application and admission into the United States. *Id.* LSS also needed to show that Larsen was seeking to continue to render services to the same employer, subsidiary or affiliate that employed him abroad. *Id.* The regulations governing the filing of Plaintiff's Petition are set forth in 8 C.F.R. § 204.5. The burden to establish eligibility for the immigration benefit rests with the petitioner. 8 U.S.C. § 1361.

To qualify for an employment-based visa as a multinational manager or executive, the INA requires evidence that the beneficiary's job duties are primarily managerial or executive in nature.

Executive capacity is defined by the INA as follows:

[A]n assignment within an organization in which the employee primarily—
(i) directs the management of the organization or a major component or function of the organization;
(ii) established the goals and policies of the organization, component, or function;
(iii) exercises wide latitude in discretionary decision-making; and

7

(iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B)

Managerial capacity is defined under the statute as:

[A]n assignment within an organization in which the employee primarily—
(i) manages the organization, or a department, subdivision, function, or component of the organization;
(ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
(iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A).

In its December 20, 2018, Decision denying the Petition, the USCIS stated two reasons for its denial. Doc. #18, PAGEID##1073-1074.

The first such was that the Agency was "not convinced that the position offered is in a qualifying capacity." Doc. #17, PAGEID#393. The Decision stated that the evidence provided by LSS "did not include specific job duties" which demonstrated that Larsen "will primarily function in a qualifying capacity." *Id.*, PAGEID##392-393. Additionally, the USCIS asserted that "Larsen will perform many non-qualifying duties including contract negotiations and meeting with customers." *Id.* Finally, the Decision stated that there was no evidence provided

8

as to the amount of time that Larsen would spend on behalf of LSS as opposed to its parent Canadian company, Lean Software. *Id.*

The second reason stated in the Decision for the denial of the Petition was Plaintiff's failure to submit "a job description" of Larsen's "position abroad prior to entering the U.S. as a nonimmigrant." The Decision stated that LSS "only submitted one job description for the combined position of CEO on behalf of the U.S. and Canadian companies." *Id.* "As such, the record does not establish that [Larsen] was employed abroad for at least one year in the three years prior to entering the U.S. in a qualifying capacity." *Id.*, PAGEID#394.

The Court will review the Decision denying the Petition to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *City of Cleveland*, 508 F.3d 827; 5 U.S.C. § 706(2)(a).

### B. Plaintiff did not Demonstrate that Larsen's Position is Primarily in a Qualifying Capacity with LSS

Defendants contend that the Petition and Plaintiff's response to the RFE failed to provide sufficient details to establish that Larsen's position with LSS would be primarily executive in nature. Instead, LSS provided only a "general job description" with seven bullet points, a "high level of abstraction" and "no insight into his day to day tasks." Doc. #18, PAGEID##1078-79. Plaintiff gave no description of "how, when, where and with whom these duties would occur." *Id.*, PAGEID#1080. The descriptions provided by LSS were, according to Defendants,

9

"vague" and "are nearly indistinguishable from the general descriptions provided in other cases in which courts have upheld USCIS visa denials." *Id.*

LSS asserts that the Decision is arbitrary and capricious, because it failed to consider that LSS would "employ its President and CEO in a managerial capacity." Doc. #19-1, PAGEID#1104. Plaintiff asserts that the Agency failed to consider the "relevant factors and the totality of the record when considering an immigrant visa," to follow agency precedent"[3] and "to consider and adequately explain its reasoning for rejecting the overwhelming evidence showing LSS Software sought to employ Mr. Larsen in managerial capacities under 8 U.S.C. § 1101(a)(44)(A)." *Id.*, at PAGEID#1105.

### 1. Managerial Capacity

LSS checked the box on the Form I-140 that Larsen was "[a] multinational executive or manager." Managerial capacity and executive capacity are defined

---

[3] LSS cites to *Matter of Z-, Inc*, Adopted Decision 2016-02(AAO) Apr. 14, 2016) and *Matter of G- Inc.*, Adopted Decision 2017-05 (AAO Nov. 8, 2017) as support for its position that the Decision is arbitrary and unreasonable. Both decisions from the Administrative Appeals Office ("AAO") of the USCIS are identified as a "Policy Memorandum" and found that the beneficiary would be eligible for the benefit sought. *In Matter of Z-, Inc.*, the AAO determined that the burden to establish eligibility for the L-1A was met since the beneficiary will "primarily manage an essential function" and the "USCIS officers must weigh all relevant functions, including...evidence of the beneficiary's role within the wider qualifying international organization." *In the Matter of G-Inc.*, the AAO determined that the petitioner had established that the beneficiary "will be employed as a function manager" and sustained petitioner's appeal of the Director's denial of the Form I-140. Both of these memoranda, however, clearly state that they are "intended solely for the guidance of the USCIS personnel" and "[I]t is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner." As such, the Court cannot rely upon them in this matter.

10

separately. 8 U.S.C. § 1101(a)(44)(A) and 8 U.S.C. § 1101(a)(44)(B). Plaintiff's May 19, 2017, offer of employment letter, required by 8 C.F.R. § 204.5(j)(5), however, only stated that Larsen "has the required job offer as a Multinational Executive." Doc. #17-2, PAGEID#886. Additionally, in its response to the RFE, Plaintiff stated that Larsen was applying as a "multinational executive under §203(b)(1)(C)." Doc. #17, PAGEID#412-424. Finally, Larsen's letter submitted to USCIS, in response to the RFE, explained his job duties and "the nature of my executive role as the CEO of a cross-border business." Doc. #17, PAGEID#441. Despite Plaintiff's assertions to the contrary, there is no reference in the Petition or in its response to the RFE that Larsen should be considered a multinational manager in addition to being considered a multinational executive.

Because the Agency had "'no opportunity to consider the matter, make its ruling[,] and state the reasons for its action,'" this Court will apply "[t]he administrative waiver doctrine." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 461-62 (6th Cir. 2004) (quoting, in part, *Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, (1946)); *see also Michigan Dep't of Envtl. Quality v. Browner*, 230 F.3d 181, 183 n. 1 (6th Cir.2000) (concluding that issues not raised during the agency's notice and comment period were waived for purposes of appellate review). Accordingly, because LSS failed to assert that Larsen was a multinational manager, it cannot now assert that the Agency was arbitrary and capricious for failing to consider him in that capacity. Even assuming, however, that the Agency erred in not reviewing Larsen in the

11

"multinational manager" capacity, the outcome would be unchanged, since LSS's offer of employment letter only states that Larsen has the required job offer as a Multinational Executive. Doc. #17-2, PAGEID#886. Accordingly, even without the application of the administrative waiver doctrine, the failure of the USCIS to consider whether Larsen was a "multinational manager" was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law since there was no job offer in that capacity from LSS.

### 2. Evidence of Specific Executive Job Duties, Non-Qualifying Executive Duties and Time Spent on Behalf of LSS

As required by 8 C.F.R. 204.5(j)(5), Plaintiff included with its Petition an "offer of employment" letter from LSS. Doc. # 17-2, PAGEID#886. The offer of employment from the prospective employer must indicate that "the alien is to be employed in the United States in a managerial or executive capacity" and "must clearly describe the duties to be performed by the alien." *Id.* Plaintiff listed in the offer of employment letter seven job duties of Larsen in his capacity as a "multinational executive." Included with each job duty was the percentage of time and hours per week required for each executive task. Doc. #17, PAGEID#443-445.[4]

---

[4] The seven job duties listed in the LSS offer of employment letter are as follows: (1) develop high quality business strategies and plans; ensure their alignment with short-term and long-term objectives for the company and identify opportunities that achieve corporate goals; implement policies, approve procedures, delegate tasks, monitor and oversee all operations and business activities to ensure these actions produce desired business results and are consistent with the company's overall strategy and mission (20% of time or 8 hours per 40/hour week); (2) oversee and collaborate with the management team to develop and implement plans for the operational Infrastructure of systems, processes and personnel designed to accommodate the growth objectives of the

12

The executive job duties listed in the offer of employment letter by LSS combined the job duties for LSS and Lean Software. Doc. #17-2, PAGEID#889-890.

Following receipt of the RFE, Larsen submitted a letter to USCIS explaining each of the seven "multinational executive duties" that were in the LSS offer of employment letter. Doc. #17, PAGEID#441. Like LSS, he did not separate his executive duties for the two companies. Instead, he responded as "the CEO of Lean Industries."

> First, please note that as CEO of my cross-border enterprise, all actions taken at the corporate executive and most senior-level position are inherently performed on behalf of both enterprises, given the way our business is structured to function as a cohesive cross-border enterprise.

---

company; develop a high performing management team and indirect reports by leading and motivating subordinates; act as final decision-maker and authority on hiring, firing, promotions, discipline and employee relations matters; (20% of time or 8 hours per 40/hour week); (3) act as the public face of the company through direct contact with high-level clients and business partners; drive the company to achieve and surpass sales, profitability, cash flow and business goals and objectives through relationships with partners and by establishing credibility within the industry(20% of time or 8 hours per 40/hour week); (4) review financial and formal corporate reports to ensure business performance is aligned with corporate goals; identify solutions or improvements to achieve revenues and growth (15% of time or 6 hours per 40/hour week); (5) analyze problematic situations and occurrences and provide solutions; delegate tasks to ensure company survival and growth (10% of time or 4 hours per 40/hour week); (6) maintain a deep knowledge of the markets and industry of the company (10% of time or 4 hours per 40/hour week); and (7) enforce adherence to legal guidelines and in-house policies to maintain the company's legality and business ethics; ensure that the company maintains compliance with applicable laws and regulations (5% of time or 2 hours per 40/hour week). Doc. # 17-2, PAGEID##886-891.

13

Doc. #17, PAGEID#443.

The Decision asserts that Larsen's job duties are "vague and generalized" and cites to 8 C.F.R. 204.5(j)(5), stating that the letter fails "to clearly describe the duties to be performed by the alien." In support of its finding that the job duties are not specific and detailed, the USCIS relies on *Matter of Church of Scientology International*, 19 I&N Dec. 593 (Comm. 1988) and *Fedin Bros. Co. Ltd. v. Sava*, 724 F. Supp. 1103, 1108 (E.D. N.Y. 1989), aff'd, 905 F.2d 41 (2d Cir. 1990). These decisions, however, are factually distinguishable from the case before the Court.

In *Matter of Church of Scientology International*, the Commissioner of the Board of Immigration Appeals considered whether a beneficiary satisfied the classification as a manager or executive. As stated in the decision, the beneficiary "[F]or 1 year prior to her admission to the United States had worked as a deputy commanding officer for tours for the Church of Scientology, Inc. in Sydney, Australia." *Id.* at *1. Noting that the beneficiary had the appropriate title and discretionary authority, she "'also wrote programs which she implemented' to ensure that Church policy was followed regarding 'dissemination tours for Church expansion'" in the foreign entity. *Id.* With respect to the beneficiary's position with the United States petitioner, the Commissioner stated that she is "responsible for running an entire division, but she supervises only five other employees."

Similarly, in *Fedin Bros.*, the petitioning employer claimed that the beneficiary was an executive and had served as an executive of the parent

14

company in Taiwan for at least one year prior to the application. The petitioner, however, consisted of only the beneficiary and his secretary and there was no proof of the "managerial or executive nature of his work" since "Fedin had not reached such a size that it realistically could support an executive or manager." *Id.*, at 41.

Unlike the beneficiaries and the job duties in *Matter of Church of Scientology International* and *Fedin Bros.*, however, LSS's offer of employment letter and Larsen's response to the RFE explained in considerable detail that Larsen, as the founder and CEO, engaged in "primarily" executive functions on behalf of both companies.[5] Although the Decision asserts that Larsen works "with customers, suppliers and vendors," Doc. # 17, PAGEID#392, that he "travels" on a regular basis to see customers in every region, Doc. #17-2, PAGEID#890, and that these activities were not those of a multinational executive, these duties were not Larsen's primary functions. For example, the record states that Larsen works "closely with the senior management team over regular[,] in person and virtual meetings to discuss and develop long and short-term business strategies," "conducts and leads regular (weekly, monthly, quarterly) meetings of all staff, in formal settings as well as in lunch-and learn sessions," has "the final say in defining product requirements," is "responsible for all hiring, firing[,] and

---

[5] According to Plaintiff's offer of employment letter, Larsen had been performing the CEO executive function for both LSS and Lean Software since 2012.

15

personnel actions," "guide[s] the budget cycle for the company" Doc. #17, PAGEID##444-445, and has managerial and non-managerial staff beneath him. These higher level corporate activities, coupled with the additional information provided by Plaintiff as to the development of the software product, "AdjustmentHub™," its three separate releases and the growth of the companies both in North America and Europe, leave little doubt that Larsen is a multinational executive, albeit of two separate yet intertwined companies.

Although the totality of the record supports LSS's argument that Larsen would be employed as a multinational executive and that his duties were specific and detailed, the Decision denying the Petition is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This is so because the Plaintiff combines the executive job duties for LSS and Lean Software. The regulations require that ". . . the prospective employer in the United States must furnish a job offer in the form of a statement which indicates that the alien <u>is to be employed in the United States</u> in a managerial or executive capacity." 8 C.F.R. § 204.5(j)(5) (emphasis added). Moreover, as required by 8 U.S.C. § 1101(a)(44)(B), LSS must establish that the duties are primarily executive duties within the organization.

As explained earlier, LSS, despite responding to the RFE with over 450 pages of supporting documents, failed to provide evidence that showed the amount of time Larsen would spend completing the multinational executive duties for LSS in the United States. The RFE specifically requested that the executive job

16

responsibilities between the two companies be separated.[6] Instead of providing any information concerning the amount of time Larsen would spend on executive duties for LSS only, Larsen argued the multinational executive function for Lean Industries, the combined company.

Finally, LSS asserts that because the USCIS approved two nonimmigrant L1-A multinational executive or manager petitions with Larsen as the beneficiary, this earlier action by the Agency now requires that it approve the Petition. The prior L1-A visa applications submitted by LSS with Larsen as the beneficiary, however, were not included by Plaintiff in its response to the RFE and are not part of the record. Additionally,

> [T]he benefits associated with the granting of an I–140 petition [at issue herein]—permanent residence—are sufficiently distinct from the status provided by a L–1A visa—temporary non-immigrant status—that the results of USCIS's analysis of an I–140 petition need not automatically mimic the conclusion USCIS reached when it approved an L–1A visa application even if the definitions of 'executive capacity' and 'managerial capacity' are identical for both L–1A visas and I–140 petitions.

*Noble House, Inc. v. Wiles*, No. CV 12-7816PA(RZx), 2013 WL 1164093, *16 (D.C. C.D. CA., March 19, 2013) (citations omitted) (denial of I-140 petition, despite prior

---

[6] For example, the RFE stated, under the caption "BONA FIDE JOB OFFER," the following: "It appears that the beneficiary is currently employed by the U.S. petitioning entity and the foreign employer. You must submit a timeline and schedules to establish the amount of time the beneficiary spends completing duties for each location. Furthermore, USCIS must see that this is a permanent, full-time job with the petitioning entity. In addition, you must submit evidence to establish who is in charge of each entity when the beneficiary is at the other location. Please explain who is currently running or operating the business on the daily basis in the beneficiary's absence or how the beneficiary divides the time between the U.S. and employer abroad. Also, please explain who will operate the foreign entity if the beneficiary immigrates to the United States permanently." Doc. #17, PAGEID#411.

approvals of L-1A visas, not arbitrary or capricious where agency found beneficiary duties were vague and inflated with majority of time spent interacting with customers and prior L-1A approvals were not part of the administrative record)

### C. Plaintiff did not Provide Evidence of a Job Description of Larsen's Position for Lean Software Prior to Entering the U.S. as a Nonimmigrant.

The second reason stated in the Decision concerns the lack of evidence provided by Plaintiff for the CEO position with Lean Software. At the time the Petition was filed, Larsen was already in the United States under his L1-A visa. As such, 8 C.F.R. § 204.5(j)(3)(i)(B) required that Plaintiff submit, along with its Petition, a statement from an authorized official at LSS that "in the three years preceding entry as a nonimmigrant," Larsen "was employed by" Lean Software" for at least one year in a managerial or executive capacity." LSS did not do this in its Petition and the Agency addressed the need for this information in the RFE sent to Plaintiff. Doc. #17, PAGEID#409. LSS, however, did not provide this information. Accordingly, the Court agrees with the Agency's finding that " the record does not establish that the beneficiary was employed abroad for at least one year in the three years prior to entering the U.S. in a qualifying capacity." Doc. #17, PAGEID#394.

### IV. Conclusion

For the reasons set forth above, the Court finds that the Decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

18

law. Accordingly, Defendants' Motion for Summary Judgment, Doc. #18, is SUSTAINED and the Motion for Summary Judgment of Plaintiff, Doc. #19, is OVERRULED.[7]

Judgment shall be entered in favor of Defendants and against Plaintiff, LSS Holdings, Inc.

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: March 26, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[7] This is an unfortunate result (some might say ridiculous, given that the Petitioner's duties are intertwined and performed for the benefit of both entities). However, the result is one mandated by the law and the easy to understand instructions for the Petitioner and its attorney to follow. Certainly, this unfortunate result is without prejudice to a new petition from a prospective point of view, in conformity with the then-applicable instructions.